IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| COZY BRONSHAE WASHINGTON,<br>Institutional ID No. 2003353<br>SID No. 5558387<br>Previous TDCJ ID No. 1174649, 1902783<br><br>   Plaintiff,<br><br>v.<br><br>NFN STRAUGHAN, *et al.*,<br><br>   Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 5:19-CV-230-BQ<br>§<br>§<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION AND ORDER OF TRANSFER

This case was transferred to the magistrate judge by order dated November 25, 2019. ECF No. 13 In accordance with said order, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and determined that pro se Plaintiff Cozy Bronshae Washington's claims that: (1) Captain Straughan hit him with a pepper spray can; (2) Sergeant King punched him twice; and (3) Correctional Officer (CO) Justice punched him once and kicked him in the jaw in violation of the Eighth Amendment survive preliminary screening.[1] ECF No. 22. Consequently, the Court entered an order requiring Defendants to answer or otherwise plead to Washington's claims. *Id.* Defendants Straughan and Justice filed their Answer on June 1, 2020 (ECF No. 28), and Defendant King filed his Answer on July 22, 2020. ECF No. 38.[2] As of today's date, all parties have not consented to jurisdiction by the magistrate judge.

---

[1] Washington alleges the incident forming the bases of his claims occurred on April 1, 2019, at Texas Department of Criminal Justice's (TDCJ) John Montford Unit in Lubbock, Texas. ECF No. 5, at 5–7.

[2] The undersigned completed screening in this matter April 30, 2020. *See* ECF Nos. 22, 23 (dismissing all claims except as to Defendants Straughan, King, and Justice). However, process service issues have delayed the return transfer of the case until the filing of Defendant King's answer.

Upon review of Defendants' Answers, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

## I. Discussion

The undersigned previously found that Washington's claims for excessive force survive preliminary screening.[3] *See* Order to Answer 25–26, ECF No. 22. Washington's use of force claims arise under the Eighth Amendment. To establish a constitutional violation for excessive use of force by a prison official, a plaintiff must show that the defendant unnecessarily and wantonly inflicted pain. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Whether an official's use of force is unnecessary or wanton depends on if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley*, 475 U.S. at 320–21). In *Hudson*, the Supreme Court emphasized that a plaintiff must establish both a subjective and objective component. Specifically, a plaintiff must demonstrate that (1) an official acted with a "sufficiently culpable state of mind" and (2) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). Factors relevant to this determination include, but are not limited to, the following: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officers; and (5) any efforts officers made to temper the severity of a forceful response. *See id.* at 7; *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

---

[3] The Court concluded that Washington's claims for deliberate indifference to serious medical needs, retaliation, excessive force based on all other alleged acts committed by any Defendant, as well as all grounds for relief asserted against Ms. Ayers and Traci Cooke, failed to state a claim for relief and dismissed them through the same order. *See* ECF Nos. 22, 23.

Washington contends that on April 1, 2019, as TDCJ personnel transported him from TDCJ's Montford Unit to the French Robertson Unit in Abilene, Texas, he attempted to hang himself, causing the transport bus to turn around and return to Montford. Am. Compl. 5, ECF No. 5.[4] Washington claims that when the bus returned to Montford, unknown officers (whom he does not name as defendants) cut him down from the noose and carried him off the bus. *Id.* at 5–6. According to Washington, medical staff examined him for injuries "(none noted)," and then escorted him "to the holding area where [Captain] Straughan began cutting [his] clothes off."[5] *Id.* at 6; *see* Tr. 2:11:17–:32, 2:14:25–:15:36, 2:16:00–:25. Washington avers that after removing his clothes, Captain Straughan attempted to chain Washington's wrists to his ankles. Am. Compl. 6; Tr. 2:18:00–:40. Washington admits that he actively resisted Captain Straughan's efforts to apply the restraints because he believed that method to be "against transportation policy."[6] Am. Compl. 6; *see* Tr. 2:19:05–:12, 2:20:00–:30.

Washington contends that in response to his resistance, Captain Straughan, Sergeant King, and other unknown officers took him "down to the ground" and began using force. Am. Compl. 6; *see* Tr. 2:20:30–:45. At the *Spears* hearing, Washington conceded that Defendants initially engaged in a "proper use of force" because he refused to comply with orders. Tr. 2:24:26–:35. He further acknowledged that Defendants were "never" able to restrain him in the manner Captain Straughan originally attempted. Tr. 2:24:36–:59. Nevertheless, Washington asserts that what began as a lawful use of force became unlawful when he ceased resisting and Defendants continued

---

[4] Page citations to Washington's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[5] At the *Spears* hearing, Washington stated that Captain Straughan ordered another officer to cut off Washington's clothes. Tr. 2:16:00–:25.

[6] Washington claimed at the *Spears* hearing that after his initial refusal to be restrained in a certain manner, he complied with Defendants' orders and did not resist. Tr. 2:23:00–:12, 2:26:00–:39.

to use force.[7] Tr. 2:25:25–:57. The authenticated video footage of the incident, however, clearly shows that Washington actively and sometimes violently fought against Defendants' efforts until they loaded him onto a transportation bus, and that Washington was *never* in compliance with Defendants' orders.[8]

Washington's allegations concerning the timing of the purported unlawful force are unclear, but he alleges that CO Justice punched him three times *after* he ceased resistance. Am. Compl. 6; *see* Tr. 2:20:39–:23:12, 2:50:26–53:50. At the 11:00 minute mark, however, the video shows CO Justice with his arms holding Washington, assisting the other Defendants in restraining Washington, when Justice suddenly jerks his arm back and yells, "ow."[9] In response CO Justice appears to punch Washington one time—not three.

Once Defendants secured the restraints (which took six officers almost six minutes, according to the video), Washington asserts they carried him outside to the transportation bus. Am. Compl. 6; *see* Tr. 2:20:39–:23:12, Tr. 2:27:15–:20. Washington admits that he spat on Sergeant King as he carried Washington to the bus (Tr. 2:27:14–:28:09) and asserts that Sergeant King reacted by punching him in the face with two closed fists. Tr. 2:27:14–:28:39; Am. Compl. 7. The video reflects that Sergeant King lunged at Washington in response to the spitting, but the video does not clearly show whether King punched Washington, as he claims. Washington contends that CO Justice and an African-American CO then carried him onto the bus, where they "laid him on the floor." Tr. 2:30:46–:31:11. Washington testified that CO Justice kicked him on the right-side of his jaw, causing his tooth to puncture his cheek which required two stitches. Tr.

---

[7] The Court includes discussion of the purported uses of force only as they relate to the three remaining Defendants in this action.

[8] See the Order to Answer for a complete summary of the video. Order to Answer 6–8.

[9] The authenticated records reflect that Washington bit CO Justice. At the *Spears* hearing, Washington denied biting Justice, stating that Justice's arm was pressed against Washington's mouth and "pressed" into his teeth.

2:31:13–:59, 2:36:52–:37:02. Finally, Washington alleges that Captain Straughan hit him in the head with a pepper spray can on the bus. Tr. 2:20:39–:23:12, 2:50:26–53:50. The video does not clearly refute Washington's allegations of what transpired on the bus, i.e., whether Captain Straughan struck Washington with a can of chemical agent or if CO Justice kicked Washington in the face.

Accepting Washington's allegations as true, as the Court must at this stage of the proceedings, his factual assertions state a claim sufficient to survive preliminary screening, i.e., an excessive force claim under the Eighth Amendment against Defendants Straughan, King, and Justice.[10] *See, e.g.*, *Molina v. Esparza*, Civil Action No. 2:19-CV-395, 2020 WL 1958854, at *3–4 (S.D. Tex. Mar. 11, 2020) (recommending prisoner's excessive force claim survive screening where prisoner alleged that, while handcuffed, defendants slammed him against the wall and to the ground and kicked him while he was on the ground, causing injury to his knee that required surgery), *R. & R. adopted by* 2020 WL 1955252 (S.D. Tex. Apr. 23, 2020); *Moore v. Doe*, Civil Action No. 2:17–CV–121, 2017 WL 6949741, at *5 (S.D. Tex. Sept. 14, 2017) (finding prisoner's claim that defendant "assaulted him with a closed first for two minutes while [prisoner] was shackled and strapped to a gurney" survived screening), *R. & R. adopted in part by* 2018 WL 447363 (S.D. Tex. Jan. 17, 2018); *Hudson v. McAnear*, C.A. No. C–09–327, 2011 WL 67199, at *9–10 (S.D. Tex. Jan. 10, 2011) (denying summary judgment in favor of prison guard on prisoner's excessive force claim in part because evidence did not resolve "whether the *degree* of force was appropriate under the circumstances" or if the defendant applied the force "with malicious or sadistic intent").

---

[10] As discussed in the Order to Answer, only Washington's claims that Captain Straughan hit him with a pepper spray can, Sergeant King punched him with two fists, and CO Justice punched him once and kicked him in the jaw, survive preliminary screening. Order to Answer 25.

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Accordingly, it is the **RECOMMENDATION** of the magistrate judge that a scheduling order should be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:19-CV-230-C.

## II.  Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 27, 2020

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE